


# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA J. CANTOR,<br><br>                 Petitioner,<br>v.<br>KELLY MARTINEZ, et al.,<br>                 Respondents. | Case No. 24-cv-2181-MMA-JLB<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

     Pending before the Court is Petitioner Joshua J. Cantor's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. No. 1 (the "Petition" or "Pet."). On March 4, 2025, Respondent Kelly Martinez, Sheriff of the San Diego County Sheriff's Office, filed her response to the Petition along with the state court record. Doc. No. 14, 15. Thereafter, Petitioner filed his traverse. Doc. No. 17. For the reasons set forth below, the Court **DENIES** the Petition.

# I. Background

The state court record reflects the following undisputed facts and procedural history.

## A. Factual Background

On June 28, 2022, Petitioner was arraigned in the San Diego County Superior Court on a fourteen-count complaint, charging Petitioner with, *inter alia*, committing a lewd act upon a child, attending an arranged illicit meeting with a minor, sending harmful matter with intent to seduce a minor, possession of matters depicting persons under 18 in sexual conduct, and unlawful sexual intercourse with a minor more than three years younger. Doc. No. 15-1; Doc. No. 15-5 at 82–87[1] (complaint). At that time, Petitioner pleaded not guilty to all charges, and the parties submitted that he should be held without bail pending further hearing on the matter. *Id.*

An initial bail hearing was held on July 1, 2022.[2] Doc. No. 15-3 at 20–33. Generally speaking, the prosecution argued that Petitioner was a danger to the community and his victims based upon the age of his victims, which he had groomed for years, his financial means, and "a completely nude photo" that was found on his phone. *Id.* at 22:14–23:4.

Defense counsel argued that Petitioner was not a flight risk and that various restrictions can "give the court some ease." *Id.* at 24:22–26:13. Counsel further argued that Petitioner's "has a good business here," which generates about $2 million a year in

---

[1] Unless otherwise noted, all citations are to the pagination assigned by the CM/ECF system.
[2] During the May 4, 2023 bail review motion hearing, there was some discussion as to whether this hearing was itself a bail review hearing or an initial setting of bail. Doc. No. 15-2 at 18:20–20:17. According to the record, the matter was set "for bail review," and the state court noted that the court had previously set, based upon the parties' submission, no bail. Doc. No. 15-3 at 21:10–20. However, the state court later explained that because "I did order that be without prejudice, [ ] it is considered an initial bail hearing at this time without the need for a change in circumstances." *Id.* at 23:5–7. A review of the transcript also reviews that the state court did not apply the change in legal circumstances standard applicable to bail review proceedings. Thus, the Court finds that bail was initially set, not reviewed, at the July 1, 2022 hearing.

revenue and employs 60 people, supporting Petitioner's argument that he is not a flight risk. *Id.* at 26:14–26. Regarding Petitioner's firearms, defense counsel indicated that although Petitioner sold eight, he was "trying to track down one or two others." *Id.* at 24:4–18.

The state court ordered that Petitioner be detained without bail, explaining the following:

> I appreciate the motion. I appreciate the argument that has been made, but I do find a flight risk. I do find there is some flight risk, but it is not my primary consideration. Under *Humphrey* -- I just want to indicate some of the things that the court observed, as far as in the warrant or argument.
>
> There were two children involved here. One of them under the age of 14. There were several -- there are several counts. Those involve lewd acts upon a child, child pornography and furnishing cannabis to a minor. It is reported that he started to groom one victim at age 10 for two years, while in a sexual relationship with another minor who was 17. It was that other minor, as I understand it, that told the police or someone about the other alleged victim, and she was 11, I believe, at that time.
>
> It appeared also that all of the sites that he was using were encrypted, for the most part, to exchange sexual videos with the minors. Also, the grooming process as far as befriending the family. He also reportedly had a secret room set up with cameras and an air mattress, and several items in the electronics that the detective had noted in the warrant. There were encrypted websites or information as well.
>
> I did read that they are still examining those, but there is additional new information today with allegations of a potential victim in Mexico, and so I do find that he is a danger to the public.
>
> Based on the facts of the current case and the fact that the court does still have to assume that the charges are true for purposes of setting bail, the alleged grooming and child molestation allegations over a lengthy period of time is a concern.
>
> In fact, one of the children was 10 and 11 years old at the time of some of these offenses. The fact that he uses encrypted sites and the new allegations, the fact that he is charged with a criminal offense or offenses that allege assault and sexual assault-type behavior.
>
> I do not think that his being on house arrest or -- not having concern -- or having certain conditions such as not being able to be around children, or not having access to electronics in this stage, the court does not have any way

> to ensure that -- anyway to ensure because there is no probation officer. There is no way that the court can having his belongings and his video or electronics at his business or home or anyplace else searched continually to ensure that he is not attempting to groom another child, which it appears he may be, and to protect the public against that. I do not know of any less restrictive way.
>
> I do find by clear and convincing evidence that there are no alternatives in combination or one-single alternative that does protect the public and the safety of the public and children in particular, and also ensure his attendance. As I indicated, the flight risk is not the reason that the court is imposing no bail. It is because of the danger involved under *Humphrey* and because of the charges and the children.

*Id.* at 27:17–29:18.

On May 4, 2023, Petitioner appeared in state court for a hearing on his bail review motion. Doc. No. 15-2. During the bail review hearing, counsel for Petitioner argued that bail should be set in the amount of $100,000 in accordance with the bail schedule. *Id.* at 2:24–26. Counsel further argued that while the prosecution relied on Petitioner's financial means in seeking no bail, his personal review of Petitioner's accounts revealed that Petitioner did not have the financial means to cause any harm. *Id.* at 2:1–13. Additionally, according to Petitioner's defense counsel, the 17-year-old victim had relocated to Arizona and there was "never any touching," including of the 10-year-old victim. *Id.* at 3:14–28, 8:3–4. Finally, counsel argued that bail was appropriate given that Petitioner had no criminal history, no history of violence, and no physical injuries. *Id.* at 4:3–7.

Opposing Petitioner's motion, the prosecution explained that at both Petitioner's arraignment and initial bail hearing it was determined by clear and convincing evidence that there was no less-restrictive alternative to protect the community and that denial of bail was appropriate pursuant to Article 1, section 12 of the California Constitution. *Id.* at 5:22–6:7. The prosecution argued that there were no mitigating legal circumstances and no changes in circumstances that warranted setting bail. *Id.* at 6:8–12. Additionally, the prosecution noted that after petitioner was arrested and in custody, he attempted to have his son destroy evidence of his crimes. *Id.* at 6:11–17. According to the

prosecution, Petitioner's son liquidated the business and a finding that this amounts to a change in circumstance would encourage defendants to delay the process. *Id.* at 6:18–23; *id.* at 8:20–23 ("In terms of the Defendant's financial means, the only reason why he has no financial means is because his family has liquidated the business since he's been in custody. His son has the profits from that liquidation."); *id.* at 9:2–7 ("[I]f that was a true legal change in circumstance that was permitted, every single defendant would continue out their case for over a year and then say, 'oh, well, I don't have any money anymore. You should give me bail.'").

Further, the prosecution explained that the state learned during discovery that Petitioner had indicated to another individual that he may flee to Mexico or commit suicide by cop if released. *Id.* at 9:8–14, 10:1–5.

The state court then heard from family members of both victims, who requested that Petitioner remain in custody under a no-bail hold. *Id.* at 10:6–11:24, 12:18–15:7. Additionally, the family members noted that, to their knowledge: Petitioner's father owns property in Mexico; Petitioner has contacts in Mexico; Petitioner's father and bothers are very wealthy; and Petitioner did not turn in two of his firearms and his son still has weapons. *Id.* at 11:16–22, 13:8–20. Moreover, the family members of the older victim explained that while they moved to Arizona, they travel back to California often as they have family and businesses within the state. *Id.* at 13: 21–22. And these family members argued that their daughter had been damaged substantially in terms of her mental standing and anxiety and that Petitioner's son, friends, and past employees engaged in behavior aimed at intimidating their family after Petitioner was arrested. *Id.* at 14:5–16.

Addressing the availability of less restrictive means, the prosecution explained that due to Petitioner's use of encrypted cell phone communication applications, such as Signal, it would be difficult to monitor Petitioner, including through GPS monitoring technology. *Id.* at 11:25–8. Further, regarding the issue of bodily injury, the prosecution noted that among the files of child pornography found in Petitioner's possession was a photograph of an unknown child performing a sexual act on Petitioner. *Id.* at 12:8–11.

Counsel for Petitioner rebutted these arguments, including that mental harm is not "great bodily injury" in the eyes of the law, *id.* at 16:1–7, that the delay was due to changes in counsel, *id.* at 16:8–19, that counsel was unable to locate the photograph involving Petitioner and a child, *id.* at 17:2–9, and that Petitioner was not a flight risk, *id.* at 17:10–16.

All parties agreed that a legal change in circumstance was required to set bail during the review. *Id.* at 20:18–28. The state court then summarized as follows:

> All right. So the defense contends that there is a legal change in circumstance from the decision that Judge Lewis made on July 1, 2022, that the Defendant be held without bail. And the two points that the defense gives the court is that the Defendant no longer has the financial means that the people had relied on, and that two, he is no longer a danger to the victim who was 17 at the time because she has now moved to Arizona.
> Well, I don't think the defense has established that those are a change in circumstance. I mean, I'm hearing that the Defendant has substantial means through his family and that he owns property in Mexico and his father and brother have properties or businesses in the area. So that has not been established to the court's satisfaction. and --
>
> [ ]
>
> And hearing from the 18-year-old's parents, it hasn't been established that he no longer is a danger to that victim because she is obviously very fearful. And they come back to this area because they have a business here, and they are concerned about their safety and her safety. And I also find that, you know, this type of crime does constitute a crime of violence. So I don't see that there is any reason to change the initial order of detention.
> So those are my thoughts.

*Id.* at 21:3–28.

Ultimately, the state court found no change in circumstances and denied Petitioner's request for bail. *Id.* at 22:15–16.

//
//

B. **Procedural History**

On August 9, 2023, Petitioner, proceeding *pro se*, filed a petition for writ of mandamus with the California Court of Appeal. Doc. No. 15-3. His petition was denied as untimely on August 24, 2022. Doc. No. 15-4. Alternatively, the Court of Appeal held that Petitioner failed to satisfy his burden of providing a sufficient record for the court to conduct a review of the challenged ruling. *Id.*

On September 11, 2023, Petitioner filed a second petition for writ of mandamus with the Court of Appeal. Doc. No. 15-5. On September 25, 2023, the Court of Appeal denied his second petition. Doc. No. 15-6.

On September 13, 2023, Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court. Doc. No. 15-7. His state habeas petition was denied on October 27, 2024. Doc. No. 15-8. The court explained:

> Here, the court record establishes the continuation of Petitioner's no bail status did not violate his constitutional rights. The seriousness and number of the charges, as well as the special vulnerability of the alleged victims, demonstrate by clear and convincing evidence that (1) pretrial detention is necessary to safeguard the alleged victims and the public; (2) a substantial likelihood exists [that] Petitioner's release would result in great bodily harm to others based on the felony sexual assault; and (3) no less restrictive means could reasonably vindicate the safety interests in this case.
> The charges and declaration in support of the arrest warrant speak to a pattern of repeated sexual abuse perpetrated against the minor victims, who were particularly vulnerable given their age and Petitioner's conduct in grooming them. The number of these allegations also indicate that Petitioner poses a threat to other vulnerable children, meaning Petitioner is a threat to the public at large as well as the alleged victims.

*Id.* at 5–6.

While Petitioner's state habeas matter was pending, on October 19, 2023, he filed a petition for review of the September 25, 2023 Court of Appeal decision with the California Supreme Court. Doc. No. 15-9. On November 29, 2023, his petition for review was denied "without prejudice to any relief to which [he] might be entitled after

th[e] court decides *In re Kowalczyk*, S277910." Doc. No. 15-10. Roughly a year later, on November 19, 2024, Petitioner filed the instant Petition seeking habeas relief pursuant to 28 U.S.C. § 2241.

## II. LEGAL STANDARD

Title 28 of the United States Code, Section 2241 "provides a general grant of habeas authority that is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment, such as a defendant in pretrial detention." *Bean v. Matteucci*, 986 F.3d 1128, 1131 (9th Cir. 2021) (citing *Dominguez v. Kernan*, 906 F.3d 1127, 1135 (9th Cir. 2018)); *see also Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004) ("[T]he general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention."). Pursuant to § 2241, Petitioner must show that he "is in custody in violation of the Constitution or laws or treaties of the United States" to be entitled to relief. 28 U.S.C. § 2241(c)(3). The Court reviews the state court's "factual findings with a presumption of correctness and conclusions of law *de novo*." *Hoyle v. Ada Cnty.*, 501 F.3d 1053, 1059 (9th Cir. 2007) (internal citations omitted).

## III. DISCUSSION

As a threshold matter, the Court notes that the Petition might be moot. According to Respondents, the jury trial in Petitioner's state court case was scheduled to begin on March 11, 2025. Doc. No. 14-1 at 12. Petitioner's traverse, dated March 10, 2025, does not indicate whether trial was in fact set to begin the following day or if it had been continued. *See* Doc. No. 17. Assuming Petitioner has not yet been convicted of any crimes and is still being detained pretrial, *see Barker v. Estelle*, 913 F.2d 1433, 1440 (9th Cir. 1990) (finding that a petitioner's conviction moots a habeas challenge to the prior pretrial detention even if the petitioner is currently incarcerated under the conviction itself), the Court proceeds to consider the merits of his Petition.

In the Petition, Petitioner raised due process, equal protection, fair bail, and presumption of innocence claims. *See* Pet. at 9. The Court addresses each in turn.

### A. Due Process

"The due process clauses of the Fifth and Fourteenth Amendments bar pretrial detention unless detention is necessary to serve a compelling government interest." *Reem v. Hennessy,* No. 17-cv-06628-CRB, 2017 U.S. Dist. LEXIS 196276, at *2 (N.D. Cal. Nov. 29, 2017) (citing *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014)). The Supreme Court has explained that the government may, consistent with due process, detain and individual without bail where the government's interests are "sufficiently weighty." *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also Lopez-Valenzuela*, 770 F.3d at 780–81 (9th Cir. 2014) (holding that pretrial detention must be necessary to serve a compelling government interest in order to comport with the due process clauses of the Fifth and Fourteenth Amendments).

Here, Petitioner has not shown that the no-bail determination violates the constitution of the United States or that any other error occurred. The state court determined that pretrial detention was necessary to protect the public, including children, which is a compelling government interest, *Salerno*, 481 U.S. at 748–50, and that no less restrictive combination of conditions could adequately protect the community. The state court noted, among other things, that Petitioner had a lengthy history of grooming and sexually abusing children, including befriending the families of his victims, and had used encrypted sites to commit his offenses. Reviewing the state court's factual findings with a presumption of correctness, *Hoyle*, 501 F.3d at 1059, the record sufficiently supports the state court's determination that a substantial likelihood exists that Petitioner's release would result in great bodily harm and that detention without bail was the only way to protect the community. Accordingly, habeas relief is not warranted on this ground.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Stated differently, the Equal Protection Clause commands "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living*

*Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Williams v. Illinois*, 399 U.S. 235, 241 (1970) (acknowledging the Court's "allegiance to the basic command that justice be applied equally to all persons").

According to the Petition, Petitioner appears to base his equal protection claim on his "bisexuality and polyamorous sexual orientation." Pet. at 11. However, there is no evidence in the record supporting the position that Petitioner's lawful sexual preferences—i.e., "sexual activities with various men and women," *id.*, of adult age—played any part in the state court's decision to detain Petitioner pretrial without bail. Additionally, Petitioner does not explain how his detention without bail amounts to discrimination, or how any of the relevant state statutes or bail procedures treat similarly situated persons differently based upon their sexuality or sexual orientation. And the Court's review of the record reveals that Petitioner was not denied bail or otherwise treated differently on account of his lawful sexual preferences or sexual orientation. Consequently, assuming Petitioner has exhausted this claim,[3] the Court finds that habeas relief is not warranted on this basis.

## C.     Excessive Bail

The Eighth Amendment forbids "[e]xcessive bail." U.S. Cont. amend. VIII. However, it does not guarantee a right to bail. *See id.*; *Salerno*, 481 U.S. at 752 ("The Eighth Amendment addresses pretrial release by providing merely that 'excessive bail shall not be required.' This Clause, of course, says nothing about whether bail shall be available at all."); *Carlson v. Langdon*, 342 U.S. 524, 545–46 (1952) (holding that the Eighth Amendment does not provide for an absolute "right to bail."). "[T]he Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 660 (9th Cir. 2007) (citing *Salerno*, 481 U.S. at 754).

---

[3] Based upon the Court's review of the record, it is not clear that Petitioner duly raised this issue to the California Supreme Court.

Petitioner cites no authority establishing that bail must be granted to him under the Eighth Amendment or any other constitutional provision. And for the same reasons discussed above, the Court finds that the state court's denial of bail on this record was not in violation of the Eighth Amendment. Namely, California has a compelling interest in protecting its citizens, including children, as well as victims of crimes during the pendency of criminal proceedings. And Petitioner was duly found, on this record, to pose a substantial risk of bodily harm that no amount of bail or restrictions could adequately protect against. *Cf. Salerno*, 481 U.S. at 753 ("While we agree that a primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants, we reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release."). Accordingly, Petitioner is not entitled to habeas relief on this ground.

### D. Presumption of Innocence

Petitioner also contends that his pretrial detention without bail violates his right to the presumption of innocence. Pet. at 9. Here, the record duly reflects that Petitioner's asserted right to be presumed innocent throughout his criminal proceedings, including his bail proceedings, was not violated. As is required under the California Constitution and pursuant to *In re Humphrey*, 276 Cal. Rptr. 3d 232 (Cal. 2021), the record reflects that state court analyzed the record before it in order to assess whether there was evidence sufficient to sustain a guilty verdict, *In re O'Connor*, 303 Cal. Rptr. 3d 300, 312 (Cal. Ct. App. 2022) (the California Constitution demands "evidence that would be sufficient to sustain a *hypothetical* verdict of guilt on appeal") (emphasis added); *In re White*, 262 Cal. Rptr. 3d 602, 610 (Cal. 2020) ("Whether that evidentiary threshold has been met is a question a reviewing court considers in the same manner the trial court does: by assessing whether the record, viewed in the light most favorable to the prosecution, contains enough evidence of reasonable, credible, and solid value to sustain a guilty verdict on one or more of the qualifying crimes."), and merely "assume[d] the truth of the criminal charges," *In re Humphrey*, 276 Cal. Rptr. 3d at 245, for the purpose of assessing the

considerations of victim and public safety. Thus, the Court finds no error on the record in this respect and Petitioner is not entitled to habeas relief on this ground.

### E. Qualifying Charges Argument

Finally, Petitioner argues in his traverse that Respondent has failed to address the "elephant in the room" that there is an absence of charges that qualify for no-bail detention, and that the "courts have all sidestepped CA Penal Code § 292" and *In re White*. Doc. No. 17 at 1. It does not appear Petitioner duly raised this argument or ground for relief in his Petition or to the California Supreme Court. In any event, the Court finds that Petitioner is not entitled to habeas relief based upon an alleged error in this respect.

Article I, section 12 of the California Constitution provides, in relevant part, that "[a] person shall be released on bail by sufficient sureties," except when charged with:

> (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; [ ]

Cal Const, Art. I § 12(b).

Also relevant here, California Penal Code § 292 provides that for the purpose of Article I, section 12, a violation of Penal Code §§ 261(a)(2) or (6), 262(a)(1) or (4), 264.1, 286(c) or (d), 287(c) or (d), 288(b), or 289(a) "shall be deemed to be a felony offense involving an act of violence and a felony offense involving great bodily harm."

According to Petitioner, because he was not charged with any of the crimes listed in California Penal Code § 292, he does not have a qualifying charge for denying him bail pursuant to Article I, section 12(b) of the California Constitution. To the extent Petitioner raises an issue as to the fact that the state court never expressly addressed or identified the qualifying charges in this case, the Court notes that it appears from the record that this was because it was effectively conceded during the state court

proceedings that Petitioner was charged with at least one qualifying offense. *See generally* Doc. No. 15-5 at 50–60 (motion to set reasonable bail); *id.* at 61–66 (motion to reduce bail); *see also* Doc. No. 15-8 at 5 (concluding that the state court correctly found by clear and convincing evidence a "substantial likelihood exists [that] Petitioner's release would result in great bodily harm to others *based on the felony sexual assault*[] . . .") (emphasis added).

The California Supreme Court has explained that to deny bail under Article I, section 12(b), a court must first satisfy itself that the record contains evidence of a qualifying offense. *See In re White*, 262 Cal. Rptr. 3d 602, 616 (Cal. 2020). Here, Petitioner's argument relies on the faulty premise that the violations listed in California Penal Code § 292 are the only offenses that can be a predicate violent felony for denying bail under section 12(b) of the California Constitution. That is simply not the case. *See, e.g.*, *In re O'Connor*, 303 Cal. Rptr. 3d at 309–10 (analyzing whether and ultimately finding that felony child endangerment, Cal. Pen. Code § 273(a)—not an enumerated violation—was a qualifying offense). As the California Court of Appeal explicitly recognized in *O'Connor*:

> Significantly, article I, section 12(b) does not list any specific violent felony offenses within its provision for felony offenses that qualify for the denial of bail, although the Legislature has listed specific violent felonies in defining a violent felony in other penal statutes. (See, e.g., § 667.5, subd. (c) ["'violent felony' means any of the following"].) We deduce that because the Legislature declined to enumerate specific offenses in article I, section 12(b), the drafters must have intended the broad phrase, "[f]elony offenses involving acts of violence on another person," to encompass conduct beyond "violent felonies" that are defined in and can be charged under the Penal Code.

*In re O'Connor*, 303 Cal. Rptr. 3d at 311.

Moreover, Petitioner was charged with three counts of lewd acts upon a child in violation of California Penal Code § 288(a), Doc. No. 15-5 at 82–84, which is elsewhere defined as a "violent felony," Cal. Penal Code § 667.5(c)(6), under a narrower definition

than courts employ when analyzing the violent felony predicate requirement of the California Constitution's bail provision. *See, e.g.*, *Nunez-Dosangos v. Superior Court*, 107 Cal. App. 5th 283, 291 n.4 (Cal. Ct. App. 2024) (explaining that the court in *O'Connor* interpreted "felony offenses involving acts of violence on another person" under Cal. Const. art. I, § 12(b), as broader than "'violent felony'" under California Penal Code § 667.5(c)).

Petitioner also ignores the fact that California Penal Code § 292 only speaks to felony offenses involving acts of violence, while Article I, section 12(b) of the California Constitution also expressly contemplates "felony sexual assault offenses on another person." Here, it appears plain that Petitioner was charged with a felony sexual assault offense based upon, for example, the two counts of unlawful sexual intercourse with a minor more than three years younger in violation of California Penal Code § 261.5(c). Doc. No. 15-5 at 83.

Therefore, to the extent Petitioner seeks habeas relief on the ground that he was denied bail pursuant to Article I, section 12(b) without facing a predicate offense, the Court finds no error in the record on this basis.

### F. Certificate of Appealability

A petitioner seeking relief from pretrial detention pursuant to 28 U.S.C. § 2241 needs a certificate of appealability under 28 U.S.C. § 2253(c)(1). *See Wilson v. Belleque*, 554 F.3d 816, 825 (9th Cir. 2009) ("[A] state prisoner who is proceeding under § 2241 must obtain a [certificate of appealability] under § 2253(c)(1)(A) in order to challenge process issued by a state court."). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citations omitted).

Here, the Court finds that Petitioner has not made a substantial showing that his constitutional rights have been violated, reasonable jurists would not debate the outcome here, and the issues presented do no deserve encouragement to proceed further. Accordingly, the Court **DECLINES** to issue a certificate of appealability.

### IV. CONCLUSION

Based upon the foregoing, the Court **DENIES** Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The Court further **DECLINES** to issue a certificate of appealability and **DIRECTS** the Clerk of Court to enter final judgment and close this case.

**IT IS SO ORDERED**.

Dated:  April 4, 2025

HON. MICHAEL M. ANELLO
United States District Judge